**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **VS** | : | **3:CR-96-274** |
| | : | **3:CV-05-449** |
| | : | **(JUDGE VANASKIE)** |
| **PAUL F. POLISHAN** | : | |
| | : | |

<u>**MEMORANDUM**</u>

Before the Court is Defendant Paul F. Polishan's Motion to Vacate, Set Aside, or Correct

Sentence and Order a New Trial pursuant to 28 U.S.C. § 2255.  (Dkt. Entry 334-1.)[1]  Mr.

Polishan advances two arguments in his § 2255 Motion: (1) his sentence was imposed in

violation of his Fifth and Sixth Amendment rights, as recognized by the Supreme Court in

Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004);

and United States v. Booker, 543 U.S. 220 (2005); and (2) he was denied his Sixth Amendment

right to effective assistance of counsel because trial counsel allegedly failed to conduct

adequate pretrial discovery.  Because Mr. Polishan is not entitled to relief on either ground, the

§ 2255 Motion will be denied.

**I. <u>BACKGROUND</u>**

On October 29, 1996, a Grand Jury convened in this District returned an indictment

against Mr. Polishan in connection with the falsification of accounting entries in the books and

---

[1]The citations to the docket entries are to the criminal docket, No. 3:CR-96-274.

records of the Leslie Fay Companies, Inc. ("Leslie Fay"), a publicly-traded corporation.  (Dkt. Entry 1.)  The accounting fraud – which occurred while Mr. Polishan was Leslie Fay's Senior Vice-President of Finance, Chief Financial Officer, and Chief Accounting Officer – resulted in the substantial over-statement of Leslie Fay's net income for the years 1990, 1991, and 1992. Mr. Polishan was charged with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; seven (7) counts of making material false statements and representations to the United States Securities and Exchange Commission in connection with required securities filings, in violation of 18 U.S.C. § 1001 (Counts II through VIII); one count of fraud in connection with the purchase and sale of securities, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and Rule 10b-5 (Count IX); one count of bank fraud, in contravention of 18 U.S.C. § 1344 (Count X); and ten (10) counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts XI through XX).  Mr. Polishan pled not guilty to all charges.

On November 25, 1996, United States Magistrate Judge Thomas M. Blewitt was designated to serve as special master to preside over the anticipated lengthy discovery process.  (November 25, 1996, Order of Court, Dkt. Entry 10.)  Magistrate Judge Blewitt initially set May 11, 1998, as the deadline for the completion of pretrial discovery, but later extended the deadline to December 15, 1998.

Because of the voluminous documents and records constituting the Government's case, the Government adopted an "open file" policy and made available to the defense all materials

2

other than privileged items.  Over the course of the two-year discovery period, the defense had

access to approximately 650,000 to 1.2 million pages of documents for inspection and copying.

The defense copied approximately twenty banker boxes of the materials produced by the

Government.  Additionally, the defense had access to: (1) the 369-page Audit Committee

Report issued by Leslie Fay's Audit Committee following an internal investigation that preceded

the indictment; (2) materials generated by the SEC investigation; and (3) materials generated

by the securities fraud class action litigation in which Mr. Polishan was a defendant.

On January 5, 1999, Mr. Polishan filed an "Omnibus Pretrial Motion," (Dkt. Entry 58), in

which Mr. Polishan requested the establishment of a document depository, to which Mr.

Polishan and the Government would have access while trial preparations proceeded, and a

directive that the Government identify and produce specific documents favorable to Mr.

Polishan and material to his guilt or innocence, as required by Brady v. Maryland, 373 U.S. 83

(1963).

Magistrate Judge Blewitt heard oral argument on the discovery-related issues on March

9, 1999, and entered an Order on March 11, 1999, disposing of these issues.  (See Dkt. Entry

67.)  First, Magistrate Judge Blewitt denied the request for a document depository, although he

allowed the defense "to make individual requests for specific documents as the need for same

becomes known."  (Id. at 2.)  Second, Magistrate Judge Blewitt denied Mr. Polishan's request

for the Government to identify and produce specific Brady material, reasoning that the

Government's provision of an open file for more than two years satisfied its <u>Brady</u> obligations.

Mr. Polishan did not appeal Magistrate Judge Blewitt's ruling to the Court.

On March 15, 1999, the Court disposed of the remaining issues in Mr. Polishan's

Omnibus Pretrial Motion, including granting his unopposed motion for a non-jury trial.  (Dkt.

Entry 68.)  The Court scheduled the commencement of trial for September of 1999.  The trial

was subsequently continued, at Mr. Polishan's behest, to March 1, 2000, to provide additional

time for trial preparation, including the generation of a report by Mr. Polishan's accounting

experts.

The non-jury trial lasted thirty-five (35) days and extended over a period of almost four

months.  On July 5, 2000, the Court returned its verdict, finding that the Government had

proven guilt beyond a reasonable doubt on 18 of the 20 charges against Mr. Polishan (Counts I

through XII and XV through XX).  (<u>See</u> Verdict of Court, Dkt. Entry 180.)[2]

On August 14, 2000, Mr. Polishan moved for a new trial.  (Dkt. Entry 198.)  On

September 13, 2000, Mr. Polishan superceded the Motion for a New Trial with an "Omnibus

Post-Verdict Motion," which sought an acquittal or a new trial.  (Dkt. Entry 207.)  Among other

reasons, Mr. Polishan claimed an entitlement to a new trial on the ground that Magistrate Judge

Blewitt erred in his rulings concerning the discovery-related issues presented in the Omnibus

---

[2]Neither party requested specific findings of fact.  Consequently, a general verdict was returned.  <u>See</u> FED. R. CRIM. P. 23(c).

Pretrial Motion.

By Memorandum and Order of July 27, 2001, the Court denied Mr. Polishan's Omnibus Post-Verdict Motion.  See United States v. Polishan (Polishan I), No. 3:CR-96-274, 2001 WL 848583 (M.D. Pa. July 27, 2001).  Regarding the discovery issues, the Court concluded that Mr. Polishan waived further review of Magistrate Judge Blewitt's rulings by failing to appeal the March 11, 2000, Order.  Id. at *11-12 (citing M.D. PA. R. 72.2).  The Court also determined that, even if judicial review of the rulings were available, a new trial was not warranted.  First, the Court found that Magistrate Judge Blewitt had not abused his discretion in denying Mr. Polishan's request for a document depository, given that Mr. Polishan was afforded over two years to review the documents possessed by the Government and had access to transcripts and documents generated in the SEC investigation and securities fraud class action litigation. Id.  And second, the Court rejected Mr. Polishan's assertion that it was error to deny his request that the Government specifically identify documents that could constitute Brady material, finding that the open file policy satisfied the Government's obligation under the circumstances of this case.  Id. at *14.

Following the Court's denial of Mr. Polishan's Omnibus Post-Verdict Motion, Mr. Polishan's sentence was determined.  A Presentence Investigation Report was prepared utilizing the 1992 edition of the Guidelines Manual.  (Presentence Investigation Report ("PSR"), ¶ 47.)  The offenses for which Mr. Polishan was convicted – Counts I through XII and XV

5

through XX – were grouped together in computing the applicable guideline range.  (Id. ¶ 49.)

Mr. Polishan was assigned a base offense level of 6 under U.S.S.G. § 2F1.1(a).  (Id. ¶ 50.)

Eighteen levels were added pursuant to U.S.S.G. § 2F1.1(b)(1)(S) because the aggregate loss

of the accounting fraud exceeded $80,000,000.  (Id. ¶ 51.)  Two levels were added pursuant to

U.S.S.G. § 2F1.1(b)(2) because the "offenses involved more than minimal planning and/or

scheme to defraud more than one victim."  (Id. ¶ 52.)  Four levels were added pursuant to

U.S.S.G. § 3B1.1(a) because of Mr. Polishan's leadership role in the accounting fraud; two

levels were added pursuant to U.S.S.G. § 3B1.3 because of Mr. Polishan's abuse of a position

of private trust; and an additional two levels were added pursuant to U.S.S.G. § 3C1.1 because

Mr. Polishan obstructed justice by presenting perjured testimony during the trial.  (Id. ¶¶ 46, 54-

56.)  Thus, the Presentence Investigation Report determined Mr. Polishan's net offense level to

be 34.  (Id. ¶ 61.)  Mr. Polishan had no criminal history points, placing him in criminal history

category I.  (Id. ¶ 64.)  With a total offense level of 34 and a criminal history category of I, Mr.

Polishan's guideline imprisonment range was 151 to 188 months.[3]  (Id. ¶ 83.)

       Mr. Polishan objected to three of the sentencing enhancements of the Presentence

Investigation Report: the aggregate loss from the accounting fraud, the abuse of a position of

private trust, and the obstruction of justice (i.e., perjured testimony) enhancements.  Mr.

_____

       [3]Under the statutes of conviction, Mr. Polishan was facing a maximum term of
imprisonment of 120 years, or 1,440 months.

Polishan also raised an Apprendi objection to the upward adjustments.

The Court in Apprendi held that facts increasing the penalty for a crime beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490.  Because the facts supporting the upward adjustments were not presented to a jury, Mr. Polishan contended that the statutory maximum was the properly calculated guideline range without the adjustments.

The Court rejected the Apprendi challenge as well as the objection to the obstruction of justice enhancement.  The Court, however, permitted Mr. Polishan to present expert accounting testimony on the aggregate loss resulting from the accounting fraud.  Based upon testimony from the defense perspective that the loss was approximately $17,000,000, the Court reduced the offense level by 3, resulting in a guideline imprisonment range of 108 to 135 months.[4]  On January 23, 2002, the Court imposed a term of imprisonment of 108 months.  (Dkt. Entry 275.)

Mr. Polishan timely appealed the final judgment.  He raised three issues on appeal, including the discovery-related issues, but did not pursue the Apprendi challenge to his sentence.  On July 14, 2003, the Third Circuit affirmed Mr. Polishan's conviction.  United States v. Polishan (Polishan II), 336 F.3d 234 (3d Cir. 2003).  Among other things, the Third Circuit agreed that Mr. Polishan had waived judicial review of the discovery-related issues by failing to

---

[4]The Court denied Mr. Polishan's request for a downward departure for diminished capacity and extraordinary civic, charitable, and personal services.

appeal the Magistrate Judge's ruling to this Court.  See id. at 240-41.  Mr. Polishan thereafter

filed a petition for writ of certiorari with the Supreme Court, which was denied on March 1,

2004.  See Polishan v. United States, 540 U.S. 1220 (2004).  Mr. Polishan's conviction thus

became final for purposes of 28 U.S.C. § 2255 on March 1, 2004.

On February 28, 2005, Mr. Polishan timely filed the instant § 2255 Motion.  Mr. Polishan

challenges his sentence on two bases.  First, he argues his sentence is unconstitutional and

exceeds the statutory maximum, in violation of Apprendi, Blakely, and Booker, because the

guideline imprisonment range was adjusted upwards based upon facts neither charged in the

indictment nor proven beyond a reasonable doubt to a jury.  Mr. Polishan justifies his failure to

assert the Apprendi component of his challenge on direct appeal on two bases: (1) ineffective

assistance of appellate counsel in neglecting to raise the issue; and (2) futility, i.e., a "solid wall

of contrary precedent constituted justifiable cause for not raising it on appeal."  (§ 2255 Motion,

Dkt. Entry 334-1, at 7.)  Second, Mr. Polishan argues that the Court's denial of his request for a

downward departure utilized a legal standard based upon the then-mandatory sentencing

guidelines, which amounted to an "unconstitutional mandatory minimum sentence."  (Id. at 9.)

Mr. Polishan's § 2255 Motion also contends that he was denied his Sixth Amendment

right to effective assistance of counsel because his trial counsel failed to conduct adequate

pretrial discovery, thus depriving Mr. Polishan of the opportunity to be prepared for trial,

conduct competent cross-examination of witnesses, and use exculpatory evidence.

Specifically, Mr. Polishan argues that trial counsel's failure to timely appeal the Magistrate Judge's ruling, resulting in a waiver of judicial review, prevented adequate discovery.  (Id. at 10-11.)

By Order of Court dated March 9, 2005, the Government was directed to respond to the § 2255 Motion.  (Dkt. Entry 335.)  The Government timely responded to the motion on March 18, 2005.  (Dkt. Entry 336.)  Mr. Polishan filed a rejoinder with accompanying affidavits on April 1, 2005.  (Dkt. Entry 338.)

## II. DISCUSSION

### A. Standard of Review

A prisoner sentenced by a federal district court may attack his sentence if it was "imposed in violation of the Constitution or laws of the United States, . . . was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255. "The standard of review for a motion for relief under § 2255 is strict."  Anwo v. United States, No. Civ. 05-1574 (DRD) and CRIM. 01-0379 (DRD), 2006 WL 561922, at *1 (D.N.J. Mar. 7, 2006).  "The petitioner is entitled to an evidentiary hearing as to the merits of his claims unless the 'files and records of the case conclusively show the petitioner is not entitled to relief.'" United States v. Reed, Nos. 00-cr-203 and 05-cv-1465, 2006 WL 2349987, at *2 (E.D. Pa. Aug. 11, 2006) (quoting 28 U.S.C. § 2255).  The determination as to whether the record clearly shows the petitioner is not entitled to relief is committed to the sound discretion of the district

court.  Id. (citing United States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989)).  In this regard, the

Court may draw upon its personal recollection and knowledge of events when resolving any

factual allegations of the § 2255 Motion.  See Gov't of Virgin Islands v. Nicholas, 759 F.2d

1073, 1077 (3d Cir. 1985).  Here, Mr. Polishan is not entitled to an evidentiary hearing because,

as discussed below, it is clear from the § 2255 Motion, the Government's response, and his

reply, that Mr. Polishan is not entitled to any relief.

### B. Mr. Polishan's Sentence

Mr. Polishan argues that his Fifth and Sixth Amendment rights were violated when the

Court enhanced his sentence based upon facts not pled in the indictment or proved beyond a

reasonable doubt to a jury.  Mr. Polishan relies upon the Supreme Court's decisions in

Apprendi, Blakely, and Booker in support of this claim.[5]  Additionally, Mr. Polishan claims the

---

[5]In Apprendi, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  In Blakely, decided after Polishan's conviction and sentence became final, the Court applied Apprendi to a state sentencing regime and clarified the meaning of "statutory maximum" as the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant [and] not the maximum sentence a judge may impose after finding additional facts."  542 U.S. at 303-04.  The Court in Blakely explicitly noted, however, that its holding had no effect on the federal sentencing guidelines.  Id. at 305 n.9.  Finally, the Court in Booker extended its holding in Apprendi to the federal sentencing guidelines, declaring the guidelines unconstitutional to the extent the guidelines permitted judges to find facts resulting in greater sentences than authorized by the facts established by a guilty plea or jury verdict.  543 U.S. at 243-44.  The Court remedied the constitutional defect by severing the statutory provisions that made the guidelines mandatory.  Id. at 245.

Court's denial of his request for a downward departure was error because it employed an incorrect legal standard resulting in an unconstitutional mandatory minimum sentence.  Mr. Polishan suggests in his brief that the Court's error arose from the mandatory nature of the sentencing guidelines.  (Def's Reply to Gov't's Br. in Opp. to § 2255 Motion, Dkt. Entry 338-1, at 12.)

To the extent Mr. Polishan challenges his sentence on the ground it violates <u>Blakely</u> and <u>Booker</u>, including his assertion of an "unconstitutional mandatory minimum sentence," his relief must be denied because our Court of Appeals has repeatedly held that "<u>Booker</u> does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date <u>Booker</u> was issued."[6]  <u>Lloyd v. United States, 407 F.3d 608, 616 (3d Cir. 2005)</u>; <u>see also</u> <u>United States v. Rennert, 182 Fed. Appx. 65, 67-68 (3d Cir. 2006)</u>; <u>United States v. Brown, 170 Fed. Appx. 240, 242 (3d Cir. 2006)</u>.  It is undisputed that Mr. Polishan's conviction and sentence became final on March 1, 2004, when the Supreme Court denied his petition for a writ of certiorari.  Thus, his conviction was final approximately ten months before <u>Booker</u> was decided.  Accordingly, Mr. Polishan is not entitled to relief on the ground that his sentence

_____

[6]The Government correctly notes that the "appropriate dividing line" is the date <u>Booker</u> issued, rather than the date <u>Blakely</u> was decided, because <u>Booker</u> announced the new rule applicable to the federal system.  <u>See</u> <u>Lloyd v. United States, 407 F.3d 608, 611 n.1 (3d Cir. 2005)</u>.  Even if <u>Blakely</u> were the "appropriate dividing line," however, Mr. Polishan's conviction was final before the date <u>Blakely</u> was issued and, under the Third Circuit's reasoning in <u>Lloyd</u>, <u>Blakely</u> would not be given retroactive effect either.

violated Booker (or Blakely).

In an apparent effort to circumvent the case law that refuses to apply Booker retroactively to cases on collateral review, Mr. Polishan bases the attack on his sentence on Apprendi.  In that case, his challenge would not be dependent upon the retroactive application of Apprendi, since Mr. Polishan's conviction and sentence became final after Apprendi was decided on June 26, 2000.  Our Court of Appeals, however, has made clear that neither Blakely nor Booker was compelled by the rationale of Apprendi.  See Lloyd, 407 F.3d at 612-13. Indeed, Mr. Polishan concedes that there was a solid "wall of authority" that found Apprendi inapplicable to the federal sentencing scheme prior to Blakely.  To allow Mr. Polishan to pursue a post-Booker challenge to his sentence based upon Apprendi would effectively make Booker apply retroactively to cases on collateral review, a proposition rejected in Lloyd.  407 F.3d at 615-16.

Mr. Polishan nonetheless asserts that he should be able to seek relief based upon Apprendi because he had raised its holding during the sentencing phase of this protracted proceeding.  Though asserting an Apprendi challenge in this Court at the time of sentencing, Mr. Polishan's preeminent counsel did not pursue this argument on direct review in the Third Circuit.

A defendant's failure to raise an issue on direct appeal generally operates as a waiver, or procedural default, of that issue on a subsequent collateral challenge.  United States v.

12

Frady, 456 U.S. 152, 167-68 (1982).  In United States v. Essig, our Court of Appeals extended

Frady's reasoning to the failure to raise an error in sentencing on direct appeal.  10 F.3d 968,

977, 979 (3d Cir. 1993); see also United States v. Mannino, 212 F.3d 835, 839 (3d Cir. 2000).

Mr. Polishan does not dispute the fact that the Apprendi issue was not pursued in his direct

appeal to the Third Circuit.  Instead, he argues that the two-prong test articulated in Frady – the

existence of cause excusing the procedural default and "actual prejudice" resulting from the

error – applies here to permit collateral relief.  Frady, 456 U.S. at 167-68; Mannino, 212 F.3d at

839; Essig, 10 F.3d at 979.

       Mr. Polishan contends that his appellate counsel was ineffective when he failed to raise

the Apprendi issue in the direct appeal, thereby constituting the requisite cause under Frady.

The court in Mannino recognized that a "successful showing of ineffective assistance of counsel

may satisfy the 'cause' prong of a procedural default inquiry."  Mannino, 212 F.3d at 840.  The

ineffectiveness must rise to the level of a constitutional deprivation, which requires a showing

that (1) "'counsel's representation fell below an objective standard of reasonableness,'" and (2)

counsel's deficient performance prejudiced the defendant such that "'there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.'"  Id. (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).

       Here, regardless of whether the failure to raise the Apprendi claim on direct appeal falls

below an "objective standard of reasonableness," Mr. Polishan cannot show that he was

prejudiced as a result.  Mr. Polishan must demonstrate there is a "reasonable probability that the result of the appeal would have been different."  Id. at 845.  Had Mr. Polishan raised the Apprendi issue on appeal, the Third Circuit would have rejected that ground because this Court's sentence of 108 months clearly fell below the statutory maximum term of imprisonment. This Court's sentence did not run afoul of the principles emanating from Apprendi as understood at the time of sentencing.  In this regard, the Third Circuit had consistently rejected similar arguments premised upon Apprendi, see, e.g., United States v. DeSumma, 272 F.3d 176, 181 (3d Cir. 2001); United States v. Williams, 235 F.3d 858, 863 (3d Cir. 2000), and Mr. Polishan concedes this fact.  (Def's Reply to Gov't Br. in Opp. to § 2255 Motion, Dkt. Entry 338-1, at 3 n.1.)  Thus, there is no doubt that the Apprendi claim would not have met with success in the Third Circuit when it decided Mr. Polishan's appeal nearly twelve months before the ruling in Blakely.[7]

Nevertheless, Mr. Polishan submitted a declaration from his appellate counsel, who stated:

> Had I done as I originally intended [raise the Apprendi issue on
> direct appeal to the Third Circuit, which would have enabled
> him to include the issue in the petition for writ of certiorari] it
> strikes me that there is a reasonable probability that Mr.
> Polishan's cert petition would then have been held pending the
> decision in Blakely, and after June 24, 2004 (the date of

---

[7] The Third Circuit affirmed Mr. Polishan's conviction on July 14, 2003, and Blakely was decided on June 24, 2004.

> decision in <u>Blakely</u>), Mr. Polishan's case would have been
> vacated and remanded for further consideration by the Third
> Circuit.  Beginning that summer, the Third Circuit began holding
> all its sentencing appeals to see what would happen in
> Guidelines cases after <u>Blakely</u>.  When cert was granted in
> August in <u>Booker</u> (and its companion case, <u>Fanfan</u>), Mr.
> Polishan's appeal would have been placed on hold again.  The
> conviction therefore would not have become final prior to the
> decision in <u>Booker</u>, and he would have enjoyed an automatic
> resentencing . . . .

(Declaration of Peter Goldberger, Ex. to Def's Reply to Gov't's Br. in Opp. to § 2255 Motion,

Dkt. Entry 338-4, ¶ 15.)

This contention – resolution of the certiorari petition would have been stayed pending

the Supreme Court's holding in <u>Blakely</u> – is entirely conjectural.  The test is whether there is a

reasonable <u>probability</u>, not a mere possibility, that the scenario hypothesized by Mr. Polishan's

lawyer would have occurred.  The Supreme Court denied Mr. Polishan's certiorari petition on

March 1, 2004, three weeks before oral argument was held in <u>Blakely</u> (March 23, 2004).  The

Court in <u>Blakely</u> specifically noted that its decision expressed no view on the federal sentencing

guidelines as the Court was only addressing the validity of a state sentencing regime.  <u>See

Blakely, 542 U.S. at 305 n.9.</u>  Significantly, Mr. Polishan has not cited any federal sentencing

decision that was pending review by the Supreme Court when it denied his certiorari petition

and which was either vacated by the High Court in light of <u>Blakely</u> or held for further

consideration pending the outcome in Blakely.[8]  Moreover, Blakely was decided on June 24,

2004, and the petitions for writ of certiorari in Booker and United States v. Fanfan were not filed

until July 21, 2004, approximately one month after Blakely.  See Petition for Writ of Certiorari,

United States v. Fanfan, 543 U.S.220 (2005) (No. 04-105), 2004 WL 1638205; Petition for Writ

of Certiorari, United States v. Booker, 543 U.S. 220 (2005) (No. 04-104), 2004 WL 1638204.

Thus, it seems the Court did not contemplate resolving issues surrounding the federal

sentencing guidelines until after the lower courts had reviewed or imposed sentences under the

guidelines in light of Blakely, which occurred in both Booker and Fanfan.  Therefore, because it

is unlikely that the series of events suggested by Mr. Goldberger would have actually

transpired, Mr. Polishan cannot show he was prejudiced by Mr. Goldberger's alleged ineffective

assistance and, as such, cannot show the requisite cause required to relieve him of his

procedural default.[9]

--------

[8]Independent research has not revealed any challenge to the federal sentencing scheme that was remanded by the Supreme Court in light of Blakely.   A Westlaw search indicates that there were hundreds of cases remanded by the High Court in light of Booker, but in none of those cases was a certiorari petition filed with the Supreme Court before March 1, 2004, the date Mr. Polishan's petition was denied.  There thus does not appear to be any factual foundation for the speculation that the Supreme Court would have held Mr. Polishan's petition until after Blakely was decided and then remanded the matter to the Third Circuit.

[9]Mr. Polishan relies upon Mannino to support his claim of prejudice due to Mr. Goldberger's alleged ineffective representation.  Mannino, however, is easily distinguishable. There, the district court sentenced defendants following their convictions for drug conspiracy based upon an erroneous interpretation of the sentencing guidelines.  Mannino, 212 F.3d at 838-39, 841.  Both the Magistrate Judge who initially considered the § 2255 motion and the Third Circuit recognized the district court's "erroneous methodology [in] calculat[ing] the

In summary, Mr. Polishan waived his right to challenge his sentence on the ground its imposition violated Apprendi because he failed to pursue the issue on direct appeal. Furthermore, the consequences of this procedural default cannot be avoided because Mr. Polishan cannot show the prejudice element of the Frady two-prong test.[10]  Accordingly, Mr. Polishan's request for relief from his sentence will be denied.

---

appropriate sentence." Id. at 842.  Had defendants' counsel raised the error on direct appeal, there was a reasonable probability the court would have vacated the sentences.  Here, by contrast, the sentence of 108 months was not erroneous because the guidelines were applied correctly, and the sentence imposed did not exceed the statutory maximum.  As such, the inclusion of this issue on direct appeal would have resulted in an affirmance.

[10]In the alternative, Mr. Polishan argues that the "wall of contrary authority" rejecting his interpretation of Apprendi constituted reasonable cause for his failure to raise the Apprendi issue on direct appeal.  (See 2255 Motion, Dkt. Entry 334-1, at 7; Def's Reply to Gov't's Br. in Opp. to 2255 Motion, Dkt. Entry 338-1, at 8-10.)  In Reed v. Ross, 468 U.S. 1, 16 (1984), the Court held that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim" in prior proceedings, like direct appeals.  Relying on Reed, Mr. Polishan insists the Apprendi based claim was not reasonably available to him on direct appeal because every judicial circuit, including the Third Circuit, had determined that Apprendi is not violated by judicial fact-finding at sentencing provided the sentence does not exceed the maximum term of imprisonment authorized by the statute of conviction.  Therefore, because of this unanimous authority, the Apprendi argument was novel and raising it on appeal would be futile.  There is no merit to this contention.  The Supreme Court has made clear that "'futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Engle v. Isaac, 456 U.S. 107, 130 n.35 (1982)).  Moreover, other courts have rejected this futility argument in the context of Apprendi challenges.  See, e.g., McCoy v. United States, 266 F.3d 1245, 1258-59 (11th Cir. 2001); Lu v. United States, Nos. 04 Civ. 8856 (JGK) and 01 CR. 38-01 (JGK), 2006 WL 1663283, at *2 (S.D. N.Y. June 14, 2006); United States v. Wenzel, 359 F. Supp. 2d 403, 411-12 & n.9 (W.D. Pa. 2005); United States v. Walls, 215 F. Supp. 2d 159, 165 (D. D.C. 2002).

## C. Ineffective Assistance of Trial Counsel

Mr. Polishan argues that his trial counsel's failure to "competently seek inspection of the physical evidence and witness statements denied the defendant the opportunity to . . . competently prepar[e] for trial, to competently conduct cross examination of prosecution witnesses, and to utilize potentially exculpatory evidence."  (§ 2255 Motion, Dkt. Entry 334-1, at 10; see also Def's Reply to Gov't's Br. in Opp. to § 2255 Motion, Dkt. Entry 338-1, at 26.) Specifically, Mr. Polishan alleges that his trial counsel was ineffective by failing to properly appeal the Magistrate Judge's order denying his request for the establishment of a document depository and an order requiring that the Government identify and produce specific Brady material.  Mr. Polishan claims the Magistrate Judge's order closed the discovery period.[11] (2255 Motion, Dkt. Entry 334-1, at 10-11; Def's Reply to Gov't's Br. in Opp. to § 2255 Motion, Dkt. Entry 338-1, at 26-27.)  The failure to timely appeal the Magistrate Judge's order resulted in the waiver of judicial review in this Court and on appeal.

Mr. Polishan contends there was no strategic reason for the failure to appeal the Magistrate Judge's ruling, (Def's Reply to Gov't's Br. in Opp. to § 2255 Motion, Dkt. Entry 338-1, at 27), and his trial counsel confirms this and notes his ignorance of the requirement of the

---

[11]This statement in Mr. Polishan's brief is not entirely accurate.  While the Magistrate Judge denied the defense request for a document depository, he allowed the defense "to make individual requests for specific documents as the need for same becomes known."  (Magistrate Judge's Order of March 11, 1999, Dkt. Entry 67, at 2.)

Local Rules that appeals from a Magistrate Judge's order be taken within ten (10) days thereof.

(Declaration of Timothy P. Polishan, Ex. to Def's Reply to Gov't's Br. in Opp. to § 2255 Motion,

Dkt. Entry 338-2, ¶¶ 5-6, 8.)  Trial counsel also declared that he would have filed an appeal had

he been aware of the procedure.  (Id. ¶ 7.)  In the event the Magistrate Judge's ruling was

appealed and additional discovery was permitted, Mr. Polishan states that four "key documents"

would have been requested and utilized in his defense:

> (1) Memorandum to John Vasari regarding the repeated delay
> of the issuance of the Gross Profit Reconciliation report which
> would have enabled me to explain why I was not as aware as I
> should have been with shrink problems [("Vasari Memo")]; (2)
> Memorandum to John Pomerantz in February 1993 regarding a
> Dillards charge backs [sic] which caused a significant eroding
> of our profits, and which would have shown the Court that I was
> not aware of the customer charge backs until very late which
> exemplifies and explains why I did not provide a reserve for
> them in an earlier period [("Pomerantz Memo")]; (3)
> Memorandum to Ken Martin instructing him that if he did any
> sales billing after the month end closing date, I would have his
> divisional controller reverse the sales and put them in the
> subsequent period which would show that I did not keep sales
> open and put them in the current period [("Martin Memo")]; (4)
> Don Kenia's Memorandum to the payroll clerk regarding the
> increase of the rates of certain staff about which I was not told,
> and this document would show that I was not aware of certain
> actions and activities of Don Kenia [("Kenia Memo")].

(Declaration of Paul F. Polishan, Ex. to Def's Reply to Gov't's Br. in Opp. to § 2255 Motion, Dkt.

Entry 338-3, ¶ 10.)  Mr. Polishan believes these four documents would have demonstrated

reasonable doubt as to his guilt, and the closing of discovery deprived him of the opportunity to

find these documents.  (Id. ¶ 11.)[12]

The Government disputes Mr. Polishan's assertions.  First, the Government argues that Mr. Polishan's trial counsel made several trips to inspect the documents produced by the Government, and had access to the voluminous material generated in the securities fraud class action litigation, which was the source of most of the materials produced by the Government. (Gov't's Resp. in Opp'n to Def's § 2255 Motion, Dkt. Entry 336, at 14-15.)  Second, the Government contends that trial counsel's inspection, analysis, and utilization of the documents was adequate, as evidenced by their performance at trial.  (Id. at 15.)  Regarding trial counsel's failure to appeal the Magistrate Judge's order, the Government maintains that Mr. Polishan cannot demonstrate prejudice because the Court would have sustained the Magistrate Judge's ruling on both issues.  (Id. at 16; see also Polishan I, 2001 WL 848583, *12-14.)  And, even if the Court would have ordered the establishment of a document depository, Mr. Polishan cannot

_____

[12] Significantly, the documents are not attached to Mr. Polishan's affidavit.  The record is silent as to whether the documents in fact exist.  If they do exist, the record does not indicate when or how these documents were first discovered.  All that the record contains is Mr. Polishan's description of them.  Apparently, three of the documents were authored by him.  In this regard, it is also noteworthy that there is no indication that defense counsel made a specific request for these documents prior to trial.  While trial counsel has submitted an affidavit in connection with the § 2255 motion, that affidavit does not indicated that, at the time of the trial, defense counsel was unaware of the documents referenced by Mr. Polishan.  Although a defendant should produce the evidence that an adequate investigation would have revealed, exculpatory, see, e.g., United States v. Williams, 166 F. Supp. 2d 286, 306-07 (E.D. Pa. 2001), for purposes of ruling on the § 2255 motion, Mr. Polishan's description of the documents will be accepted as accurate.

demonstrate that the result of the proceeding would have been different.  (Gov't's Resp. in

Opp'n to Def's § 2255 Motion, Dkt. Entry 336, at 16.)

Under the Sixth Amendment to the Constitution, a criminal defendant possesses not

simply a right to representation by counsel at trial, but also representation that is competent.

As mentioned above, to demonstrate the deprivation of the constitutional right to effective

assistance of counsel, a defendant must satisfy both the performance prong and prejudice

prong of the familiar Strickland standard:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense. . . .  Unless a defendant makes both
> showings, it cannot be said that the conviction or . . . sentence
> resulted from a breakdown in the adversary process that
> renders the result unreliable.

Strickland, 466 U.S. at 687.  The Court in Strickland stressed that there was no reason for a

court "to address both components of the inquiry if the defendant makes an insufficient showing

on one."  Id. at 697.  "It if is easier to dispose of an ineffectiveness claim on the ground of lack

of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.;

see also Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

This is an appropriate case for limiting review to the prejudice prong.  To demonstrate

prejudice, Mr. Polishan must show "'a reasonable probability that the result would have been

different but for the unprofessional errors." Whitney v. Horn, 280 F.3d 240, 258 (3d Cir. 2002) (quoting Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994)).  In other words, Mr. Polishan must demonstrate a reasonable probability that had his trial counsel appealed the Magistrate Judge's ruling, the Court would have reversed that ruling and granted the relief sought by Mr. Polishan.  Mr. Polishan cannot make this showing.

In the Court's Memorandum and Order of July 27, 2001 disposing of the Omnibus Post-Verdict Motion, the Court addressed the merits of the discovery-related issues and concluded the Magistrate Judge's ruling was not "clearly erroneous or contrary to law."  See Polishan I, 2001 WL 848583, at *12-14.  As such, Mr. Polishan cannot demonstrate he was prejudiced by his trial counsel's failure to appeal the Magistrate Judge's ruling.[13]

Even assuming Mr. Polishan would have succeeded in his appeal and had obtained and utilized the four documents identified in his reply to the Government's brief, Mr. Polishan cannot show a reasonable probability that the outcome of the trial would have been different.  Indeed, the introduction of the Vasari Memo, Pomerantz Memo, Martin Memo, and Kenia Memo, whether considered singularly or in conjunction with one another, would not have altered this Court's conclusion that the Government proved 18 of the 20 charges beyond a reasonable doubt.

_____

[13] As to the holding that the "open file"policy satisfied Brady, it is noteworthy that the Third Circuit subsequently came to the same conclusion.  See United States v. Pelullo, 399 F.3d 197, 212-13 (3d Cir. 2005).

As explained in Polishan I:

> At trial, the government presented compelling testimony that
> Mr. Polishan's claim of ignorance of the fraud was a
> prevarication.  The evidence showed that Mr. Polishan was
> completely familiar with the company's intricate financial books
> and records.  He had designed the formats for the periodic
> reports generated by the financial staff.  Moreover, he ruled the
> financial department with an iron fist, leading by fear and
> intimidation.

2001 WL 848583, at *5.  The documents described by Mr. Polishan, three of which were

apparently authored by him, would not have undermined the "compelling testimony" revealing

his intense oversight and awareness of the financial condition of Leslie Fay.  For example, it

would not have counteracted the evidence that he directed that the substantial capital gain from

the sale of a subsidiary be reported as operating earnings in order to prop up the company's

performance.  Nor would it have offset the compelling evidence that he felt responsible for

creating the company's results, as opposed to merely reporting them.

Mr. Polishan argues that Mr. Kenia, the Government's key witness and major participant

in the accounting fraud, wrote a memorandum to the payroll clerk regarding "the increase of the

rates of certain staff."  (Declaration of Paul F. Polishan, Ex. to Def's Reply to Gov't's Br. in Opp.

to § 2255 Motion, Dkt. Entry 338-3, ¶ 10.)  Mr. Polishan insists he did not know about this

matter.  (Id.)  Mr. Polishan argues the Kenia Memo supports an inference that he "was not

aware of certain actions and activities of Don Kenia," which presumably includes the fraudulent

accounting scheme.  (Id.)  The Kenia Memo, however, does not create reasonable doubt that

Mr. Kenia acted at the direction of Mr. Polishan to alter Leslie Fay's books to inflate its financial performance.  Mr. Kenia's testimony alone was sufficient to establish an agreement or understanding between the pair to falsify Leslie Fay's financial books and records, as well as the overt acts committed in furtherance of the conspiracy.  To be sure, Mr. Kenia admitted during his testimony that he did not apprise Mr. Polishan of the full extent of the accounting fraud.  However, there was substantial testimony and documentary evidence corroborating Mr. Kenia's testimony of Mr. Polishan's awareness of, and participation in, the fraud.  The fact that Mr. Polishan may have been unaware of Mr. Kenia's directive to increase the pay rates of certain staff members is insignificant when compared to the overwhelming evidence of Mr. Polishan's criminal liability introduced at trial.  Therefore, the Kenia Memo would not have altered the outcome.

In summary, Mr. Polishan cannot show he was prejudiced by his trial counsel's failure to appeal the Magistrate Judge's ruling, or otherwise to competently handle pretrial discovery.[14] Moreover, Mr. Polishan cannot demonstrate a reasonable probability of a different outcome had

---

[14]Mr. Polishan's bald assertions that his trial counsel failed to competently handle pretrial discovery does not comport with the reality of the proceedings.  Mr. Polishan's defense team devoted more than two years inspecting and copying a significant number of documents produced by the Government.  The trial did not commence until March 1, 2000, affording at least another year to prepare.  Furthermore, the Court personally observed defense counsel's performance at trial and their capable utilization of the documents, particularly when cross-examining the Government's witnesses.  It was apparent that Mr. Polishan's defense team carefully planned and executed a strategy, an integral component of which was the use of a multitude of documents generated in this case.

he been able to discover and utilize the four documents.  See United States v. Robinson, 301 F.3d 923, 925-26 (8th Cir. 2002) (defendant not prejudiced by trial counsel's failure to conduct an adequate pretrial investigation of a Government witness; even if an investigation would have enabled impeachment of the witness, the remainder of the Government's evidence easily demonstrated defendant's involvement in the conspiracy); Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990) (no prejudice where trial counsel failed to interview witness to self-defense claim; no showing of reasonable likelihood that interview would have yielded useful information or led to a different result at trial where self-defense claim was weak).  Accordingly, Mr. Polishan is not entitled to relief on his claim of ineffective assistance of counsel.

## III. CONCLUSION

For the reasons set forth above, Mr. Polishan's § 2255 Motion will be denied.  An appropriate Order follows.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **VS** | **:** | **3:CR-96-274** |
| | **:** | **3:CV-05-449** |
| | **:** | **(JUDGE VANASKIE)** |
| **PAUL F. POLISHAN** | **:** | |
| | **:** | |

## ORDER

**NOW, THIS 5th DAY OF FEBRUARY, 2007,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion under 28 U.S.C. § 2255 (Dkt. Entry 334-1) is **DENIED.**

2. The Clerk of Court is directed to mark this matter and the related Civil Action (3:CV-05-449) **CLOSED.**

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge